IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GRACE JIMINEZ, as                      :
Administratrix of the Estate of        :
SALVADOR PETER SERRANO,                :
and BROOKE E. MORGAN                   :      CIVIL NO. 4:04-CV-1897
                                       :
         Plaintiffs,                   :      (Judge McClure)
                                       :
      v.                               :
                                       :
ALL AMERICAN              :
RATHSKELLER, INC., d/b/a                :
THE RATHSKELLER BAR,                   :
BOROUGH OF STATE COLLEGE,              :
d/b/a STATE COLLEGE POLICE             :
DEPT., PHYLLIS H. GENTZEL,             :
d/b/a THE GENTZEL                      :
CORPORATION, BLUEBIRD                         :
ENTERTAINMENT ENTERPRISE,              :
d/b/a THE DARK HORSE, JASON            :
ROSENGRANT, RYAN                              :
ROSENGRANT, CHRIS                      :
ROSENGRANT, CURTIS                     :
ROSENGRANT, COLIN                      :
HAUGHTON, and ASSOCIATED               :
PROPERTY MANAGEMENT, INC. :
d/b/a ASSOCIATED REALTY                :
PROPERTY MANAGEMENT,                   :
                                       :
         Defendants,                   :

**M E M O R A N D U M**

June 2, 2006

1

**BACKGROUND:**

Plaintiffs Grace Jiminez, administratrix of the estate of Salvador Peter Serrano, and Brooke E. Morgan, Serrano's fiancée, initiated this action by filing a complaint on August 25, 2004.  An amended complaint was filed on October 4, 2004.  Plaintiffs filed a second amended complaint on August 11, 2005.  The second amended complaint added defendant Associated Property Management Inc., d/b/a Associated Realty Property Management ("ARPM") to the previously named defendants.

On September 27, 2005, we granted plaintiffs' motion to dismiss defendant Bluebird Entertainment Enterprise, d/b/a The Dark Horse, and dismissed all claims and cross-claims against Bluebird Entertainment Enterprise.

On May 2, 2006, we granted plaintiffs' unopposed motion for settlement and dismissed all claims against defendants Phyllis H. Gentzel, d/b/a The Gentzel Corporation and Associated Property Management, d/b/a Associated Realty Property Management.

Now before the court is defendant Borough of State College ("State College") d/b/a State College Police Department's ("SCPD's")  motion for summary judgment.  For the following reasons we will grant State College's motion and enter judgment in favor of defendant Borough of State College and against the

plaintiffs as to counts I, II, and XI.

**DISCUSSION:**

## I. LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party.  Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995).  The nonmoving party, however, cannot defeat a motion for

summary judgment by merely offering general denials, vague allegations, or

conclusory statements; rather the party must point to specific evidence in the

record that creates a genuine issue as to a material fact.  See Celotex, 477 U.S. at

32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir.

1999).

## II. FACTUAL BACKGROUND

This suit arises out of the death of Salvador Peter Serrano on the early

morning of October 26, 2003.  Serrano died after an altercation with security for the

Rathskeller Bar.  At the time of his death, Serrano was a student at Pennsylvania

State University.  On October 26, 2003, Serrano along with plaintiff Morgan,

Timothy Padalino, and Alison Bresnahan were walking down Calder Way, an

alleyway near the Rathskeller.  At around 1:30 a.m., Padalino stopped in a parking

lot near the rear of the Rathskeller to publicly urinate.

The plaintiffs claim that the incident was ignited when an unidentified

Rathskeller employee patrolling the parking lot and Calder Way area behind the

Rathskeller observed Padalino urinating and violently took him to the ground.  The

deposition testimony of defendants Jason and Chris Rosengrant indicate that they

believe a subcontracted sound technician named Ben Hagan informed them that

there was a fight occurring behind the bar.  (Rec. Doc. No. 106-2, at 33 & Rec

Doc. No. 106-2, at 33.)  As a result, several employees of the Rathskeller

confronted a group of people, among them, Serrano, Morgan, Padalino and

Bresnahan.  The plaintiffs claim that these additional employees, led by Chris

Rosengrant, confronted the group and detained and restrained them.  After verbal

and physical exchanges, Chris Rosengrant made physical contact with Serrano and

pulled him to the ground.[1]

Although the exact nature of how Serrano was restrained are in dispute, at

some point in time Jason Rosengrant turned his attention to Serrano.  Jason

Rosengrant under deposition stated that he placed Serrano's right hand behind his

back, while Serrano was on the ground and restrained him.  This is inconsistent

with the plaintiffs' version of events.  In their version, Serrano is immediately

_____

[1]The exact facts surrounding how Serrano was approached are also in

dispute.  Chris Rosengrant claims that he pulled Serrano to the ground in response

to Serrano attacking him from behind.  This is disputed by the plaintiffs'

introduction of the testimony of plaintiff Morgan from a preliminary criminal hearing

in state court where she testified that the Rathskeller employees "came up behind

[Serrano] and took his arms and threw him on the ground."  (Rec. Doc. No. 112,

Ex. D, at 5, p.179.)  Jason Rosengrant claims that plaintiff Morgan punched him on

the side of the head during this melee, but this claim is also denied by the plaintiffs.

thrown to the ground by two security employees (Jason and Chris Rosengrant) and held on the ground with Jason's knee on his back while both men conitnued to restrain him on the ground.

Officer Winkelbach of the SCPD arrived at the scene when Jason Rosengrant was on top of Serrano. He surveyed the scene and according to his deposition testimony observed that Rosengrant appeared to need help. In a matter of seconds, and without speaking to Jason, Winkelbach began to handcuff Serrano. He quickly realized that Serrano was not in any condition to resist and was essentially lifeless.

Serrano was pronounced dead by officials of Centre County. The parties do not dispute that Serrano died of asphyxia, but they do contest the cause of that asphyxia. Plaintiff's expert Dr. Michael Baden found that Serrano died of positional asphyxia under the weight of the two Rosengrant brothers. (Rec. Doc. No. 112, Ex. L, at 4.) Dr. Gordon Carl Handte, a board certified pathologist, performed an autopsy on Serrano and testified at a related criminal trial that Serrano's death was asphyxia by aspiration of vomitus.[2] (Rec. Doc. No. 106-5, at 121.)

_____

[2]Handte also noted that substantial alcohol intoxication of Serrano at the time of his death was a major contributory factor and he ruled the death accidental.

Duke Gastiger, the owner of the Rathskeller, admits that his employees restrained individuals for defensive purposes, but not for "making that person unable to leave the area so that the police could determine whether any laws have been broken." (Rec. Doc. No. 106-6, at 10.) Gastiger established the Rathskeller's policy of defensive restraint and communicated it to the staff orally. (Id. at 20, 89, 153.) Gastiger admits that individuals restrained by Rathskeller employees have both been arrested by the SCPD and also have not been arrested upon the arrival of the SCPD to the scene.[3] Gastiger did not consult with anybody at the SCPD in connection with his restraint policy.[4] Gastiger testified at his

---

[3]Plaintiff claims that in nearly every instance the SCPD would handcuff the restrained patron. Handcuffing a patron is not equivalent with an arrest. Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1995); see also United States v. Burney, 35 F. App'x 354, 355 (3d Cir. 2002) (holding that placing handcuffs on suspect was not an "arrest" and quoting Baker).

[4]Plaintiff admits that Gastiger did not initiate a discussion about the restraint policy, but asserts that on the basis of an affidavit containing double hearsay, which we will address below, unidentified employees of the Rathskeller were directed by unidentified members of the SCPD to restrain individuals until the SCPD could arrive at the scene.

deposition that Thomas King, Chief of the SCPD, did not offer any training to the tavern owners' association on the issue of self-defense or restraint.

Defendant Jason Rosengrant stated at his deposition that he was not permitted to restrain someone while waiting for the police to arrive and that he was only permitted to restrain someone to prevent the person from causing someone bodily harm. Jason Rosengrant also stated that while the SCPD had arrested individuals who had been restrained by the employees of the Rathskeller, the SCPD never offered any training to Jason or Chris Rosengrant on how to restrain people who were intoxicated.

None of the police officers deposed, including Chief King, could identify any policy, custom, or practice whereby the employees of liquor licensees were to restrain or detain an individual for purposes of permitting the SCPD to arrive on the scene and effect an arrest. The SCPD did not have a written or official policy sanctioned by Chief King to have liquor licensees hold or restrain people in order for the police to make an arrest. (Rec. Doc. No. 106-7, King's Dep., at 32.) And testimony from the depositions consistently indicated that the SCPD never instructed Rathskeller employees or liquor licensees to hold or restrain individuals.[5]

---

[5]Sergeant Fishel's testimony was that he directed Rathskeller employees to hold onto fake identifications, but not to restrain individuals who attempted to use

(Rec. Doc. No. 106-7, King's Dep., at 35-36 & 39; Rec. Doc. No. 106-8, Robb's Dep., at 8; Rec. Doc. No. 106-9, Fishel's Dep., at 14.)  The deposition testimony of the police officers indicated that they informed bar employees to consult with the owner of the establishment, an attorney, or the district attorney on when or how to restrain someone.  (Rec. Doc. No. 106-7, King's Dep., at 13 ("Our practice has always been, before this and after, is that they seek the advice of their corporate attorney since we aren't in a position to give legal advice. . . . I would refer people to the corporate attorney or the district attorney who, in some cases, might be able to answer questions for them."); Rec. Doc. No. 106-8, Robb's Dep., at 3-4 ("I would tell them to refer it to their owners and their attorneys, that we can't give that advice."); Rec. Doc. No. 106-9, Fishel's Dep., at 14, 21 ("[C]onsult their attorney."))  The SCPD never directed bars or their security employees to restrain or not to restrain intoxicated individuals.  The SCPD and its officers were unaware of whether the security employees had received training on how to restrain individuals.

## III.  ADMISSIBILITY OF GASTIGER'S APRIL 20, 2006 AFFIDAVIT

---

those identifications to gain entry into the bar.  (Rec. Doc. No. 106-9, Fishel's Dep., at 13.)

Plaintiffs have submitted an April 20, 2006 affidavit of defendant Duke Gastiger.  (Rec. Doc. No. 112-4, Ex. B.)  In relevant part the affidavit stated:

> I am the owner of the Rathskeller, I have been told by my Employees that prior to the date of Mr. Serrano's death, members of the Rathskeller staff had been asked on several occasions by the Borough Police Department to hold people until the police got there.  The police were aware we, on occasion, restrained intoxicated patrons until they arrived.
> In addition, prior to Mr. Serrano's death, there was an occasion where Rathskeller staff were asked by the Borough Police to assist in apprehending and restraining individuals who were not on the Rathskeller's property.

(Rec. Doc. No. 112-4, Ex. B, at 2.)

Defendant SCPD argues that the affidavit is not competent evidence.  We agree, but for slightly different reasons. Federal Rule of Civil Procedure 56(e) provides that an affidavit offered in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  In this circuit, hearsay within affidavits offered in opposition to motions for summary judgment may be considered, so long as the hearsay declarant can be produced at trial to offer his or her statements in an admissible form.  See Rossi v. Standard Roofing, Inc., 156 F.3d 452, 470 n.13 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,

998 F.2d 1224, 1234 n.9 (3d Cir. 1993). Thus, even though the affidavit contains hearsay the unidentified declarants could be produced at trial and offer admissible testimony.

We reject the contents of the affidavit on other grounds. The "sham affidavit" doctrine prevents a party from creating a genuine issue of material fact to defeat summary judgment by "filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)); see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1999) (gathering cases where courts rejected party offering self-contradictory evidence in attempts to create genuine issue of material fact); see also Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993) (holding where there is no explanation of conflict between supplemental affidavit and deposition testimony, self-serving contradictory supplemental affidavit cannot create a genuine issue of material fact). A court applying the "sham affidavit" doctrine may disregard the contradictory affidavit if the affiant's contradictions are unexplained and upon review of the record the court is convinced that there is no independent evidence in the record to bolster the contradictory affidavit. See Baer, 392 F.3d at 625-26.

In the instant case the affidavit is offered by Duke Gastiger, the owner of the Rathskeller, a codefendant of the SCPD.  Plaintiffs had the opportunity to depose Gastiger and the defendant SCPD introduced the transcript from that deposition. That deposition clearly indicates that the restraint policy of the Rathskeller was one created by the bar and not the police.  (Rec. Doc. No. 106-6, at 10 ("Restraint" does not include "making that person unable to leave the area so that the police could determine whether any laws have been broken."); Id. at 25 ("I've never had any conversation with the police personally about restraint."); Id. at 153 (discussing not consulting with police in establishing Rathskeller's restraint policy)).

The supplemental affidavit indicates that unidentified employees of the Rathskeller were asked by the police on several occasions to hold people until they got there and that on one unidentified occasion the police asked Rathskeller staff to assist in apprehending and restraining individuals not on the Rathskeller property. The supplemental affidavit is not an outright contradiction of Gastiger's earlier testimony, i.e., it is possible that both the Rathskeller's restraint policy could have been in place and a request by the police to hold people until they arrived was made, but there is nothing in the extensive record to bolster Gastiger's statement. Instead, the record contains the transcripts of numerous depositions of police officers, including Chief King, that all state that they never directed a liquor licensee

12

to restrain and/or detain a person so that the SCPD could respond to the scene to make an arrest.  Likewise, nothing in the depositions of Chris or Jason Rosengrant, employees of the Rathskeller, indicates that the police ever directed them to restrain customers.  Even though the affidavit is not categorically contradictory we find the principles of the sham affidavit doctrine appropriate in this case.  Gastiger, as a codefendant that did not file a motion for summary judgement, has every incentive to assist in the defeat of defendant SCPD's motion for summary judgment, by offering this affidavit after the close of rather extensive discovery.  The contents of the affidavit amount to an "adverse party" resting upon "mere allegations" and plaintiffs fail to set forth "specific facts" in the Gastiger affidavit that "show[] that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Because of the late disclosure of the information in the affidavit, its self-serving nature, the utter lack of evidence to bolster the contents of the affidavit in the record as a whole, and its unspecific assertions, we do not consider the affidavit competent evidence.[6]

_____

[6]We also agree with the defendant that even if we were to consider the affidavit as competent evidence it would not assist in the defeat of defendant's motion for summary judgment.  The contents of the affidavit do not amount to sufficient evidence from which a reasonable fact finder could find that someone at the SCPD with policymaking authority made statements about detaining and

## IV.  PLAINTIFFS' <u>MONELL</u> POLICY OR CUSTOM  CLAIM (COUNT I)

In our April 1, 2005 order we set out the relevant law relating to plaintiffs' claims.  We will now again discuss the law governing plaintiffs' claim under <u>Monell</u>.  "Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another person of any rights, privileges, or immunities secured by the Constitution or the laws of the United States."  <u>S.G. ex rel. A.G. v. Sayreville Bd. of Educ.</u>, 333 F.3d 417, 429 (3d Cir. 2003);  <u>Doe v. Delie</u>, 257 F.3d 309, 314 (3d Cir. 2001).  The section does not create any new substantive rights, but rather provides a remedy for the violation of a federal constitutional or statutory right that appears elsewhere.  <u>Doe</u>, 257 F.3d at 314 (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).

Plaintiffs' section 1983 claims are to recover for violations of the Fourteenth Amendment Due Process Clause.  The Due Process Clause provides that "[n]o

---

restraining people such that those statements would bind the SCPD.  <u>See</u> <u>McMillian v. Monroe County</u>, 520 U.S. 781, 784-85 (1997).  Plaintiffs have had the opportunity to depose numerous police officers with the SCPD and the Chief of Police, and nothing in those depositions indicates the SCPD ever directed a liquor licensee to detain or restrain a person so that the SCPD could effect an arrest.

State shall . . . deprive any person of life, liberty, or property without due process of law."  The Clause "was intended to prevent government from abusing its power, or employing it as an instrument of oppression."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) (internal citations and quotations omitted).

A municipality cannot be liable under 42 U.S.C. § 1983 solely for the injuries inflicted by its employees or agents, i.e. recovery under a theory of respondeat superior.  See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). In order to hold a municipality liable for a section 1983 claim, plaintiffs must show that municipal policymakers established or maintained a policy or custom which through its execution deprived plaintiffs of a constitutional right.  See Monell, 694 (1978); Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). A court evaluating a claim against a municipality under section 1983 must determine a "direct causal link" between the municipality's policy or custom and the alleged constitutional injury.  City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). Furthermore, the "[l]iability of municipal policymakers for policies or customs chosen or recklessly maintained is not dependent upon the existence of a 'special

relationship' between the municipal officials and the individuals harmed."

Stoneking v. Bradford Area School Dist., 882 F.2d 720, 725 (3d Cir. 1989).

Unconstitutional municipal policies or customs may take three forms:

> [1] the appropriate officer or entity promulgates a
> generally applicable statement of policy and the
> subsequent act complained of is simply an
> implementation of that policy [2] no rule has been
> announced as policy but federal law has been violated by
> an act of the policymaker itself [and 3] the policymaker
> has failed to act affirmatively at all, [though] the need to
> take some action to control the agents of the government
> 'is so obvious, and the inadequacy of existing practices
> so likely to result in the violation of constitutional rights,
> that the policymaker can reasonably be said to have been
> deliberately indifferent to the need.'

Natale, 318 F.3d at 584 (quoting Bd. of County Comm'rs of Bryan County,

Oklahoma v. Brown, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)).

The United States Court of Appeals for the Third Circuit has described

municipal liability under Monell as follows:

> A government policy or custom can be established
> in two ways.  Policy is made when a "decisionmaker
> possess[ing] final authority to establish a municipal policy
> with respect to the action" issues an official proclamation,
> policy, or edict.  Pembaur v. City of Cincinnati, 475 U.S.
> 469, 481, 106 S.Ct. 1292, 199, 89 L.Ed.2d 452 (1986).
> A course of conduct is considered to be a "custom"
> when, though not authorized by law, "such practices of
> state officials [are] so permanent and well settled" as to
> virtually constitute law.  Monell, 436 U.S. at 690, 98 S.Ct.

> at 2035 (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S.
> 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142
> (1970)).  <u>Accord</u> <u>Anela v. City of Wildwood</u>, 790 F.2d
> 1063, 1067 (3d Cir.), <u>cert. denied</u>, 479 U.S. 949, 107
> S.Ct. 434, 93 L.Ed.2d 384.
>
> In either of these cases, it is incumbent upon a
> plaintiff to show that a policymaker is responsible either
> for the policy, or through acquiescence, for the custom.

<u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990); <u>see</u> <u>Beck v.</u>

<u>City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996).

As we have already stated, under section 1983 liability cannot attach to the

municipality for merely <u>respondeat</u> <u>superior</u>.  Thus, a direct causal link must exist

between the acts of the governing body sought to be held liable and the alleged

constitutional deprivation.  <u>City of Canton</u>, 489 U.S. at 385.  "[A] municipality can

be liable under § 1983 only where its policies are the moving force [behind] the

constitutional violation."  <u>San Filippo v. Bongiovanni</u>, 30 F.3d 424, 445 (3d Cir.

1994) (quoting <u>Canton</u>, 489 U.S. at 388-89) (citations omitted).  Because of this

requirement the Third Circuit requires that the local governing body act with

deliberate indifference to the alleged constitutional deprivation.  <u>Id.</u>  This standard

allows for liability to attach to policymakers that delegate their authority, but does

not hold policymakers liable for every decision made by a subordinate.  <u>Id.</u> at 446.[7]

_____

[7]When the United States Court of Appeals for the Third Circuit adopted the

Section 1983's "under color" of law requirement and the Fourteenth

Amendment's "state action" requirement are consistently treated as the same thing.

Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982);  Jackson v. Temple Univ., 721

F.2d 931, 932-33 (3d Cir. 1983).  The Third Circuit, quoting the Supreme Court,

---

deliberate indifference standard it noted a portion of the following language from

Justice O'Connor's opinion in City of St. Louis v. Praprotnik regarding the

relationship between policymakers, policy, and the acts of subordinates. Justice

O'Connor, writing for the majority of the court and joined by three justices, stated:

> Simply going along with the discretionary decisions made
> by one's subordinates, however, is not a delegation to
> them of the authority to make policy.  It is equally
> consistent with the presumption that the subordinates are
> faithfully attempting to comply with the policies that are
> supposed to guide them.  It would be a different matter if
> a particular decision by a subordinate was cast in the
> form of a policy statement and expressly approved by the
> supervising policymaker.  It would also be a different
> matter if a series of decisions by a subordinate official
> manifested a "custom or usage" of which the supervisor
> must have been aware. . . .  In both those cases, the
> supervisor could realistically be deemed to adopt a policy
> that happened to have been formulated or initiated by a
> lower-ranking official.  But the mere failure to investigate
> the basis of a subordinate's discretionary decisions does
> not amount to a delegation of policy making authority. . .
> .

485 U.S. 112, 130 (1988).

18

has noted that the criteria to determine whether there is state action "lack rigid

simplicity." Benn v. Universal Health Sys., 371 F.3d 165, 171 (3d Cir. 2004)

(quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S.

288, 296 (2001)). In the following passage, the Supreme Court identified several

different means by which a court might determine the presence of state action.

> We have, for example, held that a challenged
> activity may be state action when it results from the
> State's exercise of "coercive power," when the State
> provides "significant encouragement, either overt or
> covert," or when a private actor operates as a "willful
> participant in joint activity with the State or its agents."
> We have treated a nominally private entity as a state actor
> when it is controlled by an "agency of the State," when it
> has been delegated a public function by the State, when it
> is "entwined with governmental policies," or when
> government is "entwined in [its] management or control."

Brentwood Acad., 531 U.S. at 295 (internal quotation marks and citations omitted).

In the instant case the second amended complaint alleges that the "SCPD

engaged in a custom, practice or policy of directing employees of various liquor

licensees in the borough of State College, including the Rathskeller, to detain and/or

restrain persons suspected by the liquor licensee to have violated the law until such

time as the SCPD could respond to the scene." (Rec. Doc. No. 78, at 11, ¶ 44).

The second amended complaint also alleges that the "SCPD unlawfully delegated

its law enforcement responsibilities to the liquor licensees and their employees."

19

(Rec. Doc. No. 78, at 12, ¶ 49.)  The complaint asserts that this course of conduct was either pursuant to an official policy of the SCPD or it was the result of custom that was so well settled as to virtually constitute and/or have the force of law.  (Rec. Doc. No. 78, at 12, ¶ 50.)[8]

In 1989, the United States Supreme Court in <u>DeShaney v. Winnebago Cty.</u> <u>Soc. Servs. Dept.</u>, 489 U.S. 189 (1989), held that the Fourteenth Amendment's

---

[8]The second amended complaint also avers that the SCPD had actual and constructive knowledge that liquor licensee employees were detaining and restraining persons suspected by the liquor licensees to have violated the law, (Rec. Doc. No. 78, at 11, ¶ 45); that the SCPD had actual and constructive knowledge that said employees "did not have appropriate training in the techniques of detention, restraint and law enforcement," (Rec. Doc. No. 78, at 11-12, ¶ 46); and the SCPD had actual and constructive knowledge that those licensees and their employees did not have appropriate training to make a determination of the lawful or unlawful nature of the conduct of the person whom they detained and/or restrained.  (Rec. Doc. No. 78, at 12, ¶ 47).  The second amended complaint asserts that the "SCPD expressly and/or implicitly condoned, encouraged, and authorized the practices of liquor licensees and their employees as described in the preceding paragraphs."  (Rec. Doc. No. 78, at 12, ¶ 48).

Due Process clause did not impose an affirmative obligation on the state to protect its citizens who are not in state custody.  Id. at 195-96 & 199-200.  The state is not obligated to protect citizens from private violence.  Id. at 195.  This holding is particularly relevant to plaintiffs allegations, as the SCPD cannot be liable simply for independent acts by private actors causing harm, even if the SCPD were aware of the likelihood of the possibility of those harms occurring.

The record indicates a total absence of an official policy, custom or edict by a policymaker at the SCPD.  Rather, the only deposition testimony directly on the subject was by Chief King and indicated the absence of a formal written policy. (Rec. Doc. No. 106-7, King's Dep., at 32.)

Plaintiffs, in their brief in opposition, focus their argument on advancing their case via a custom theory based on the delegation of police responsibilities to private actors, i.e., the liquor licensee employees, and policymaker acquiescence in that delegation despite knowing that those employees were not adequately trained. In order for plaintiffs to demonstrate that defendant SCPD delegated the practice of law enforcement to untrained bar security employees they must adduce sufficient evidence for a reasonable jury to find that the practice was widespread and deeply imbedded in the practices of the SCPD that although not law, the custom was so permanent and well settled as to constitute law and that a policymaker for the

SCPD acquiesced in that custom.  Monell, 436 U.S. at 690.  No reasonable jury

could find that the SCPD had a custom of delegating their responsibilities to bar

security from the evidence adduced by plaintiffs.

There is no competent evidence that indicates the SCPD directed liquor

licensee employees to detain or restrain individuals until the police arrived to effect

an arrest.  Plaintiffs have introduced several police reports that indicate liquor

licensee employees did detain and restrain individuals, and that nearly all of those

times the arriving police officer would handcuff the restrained individual. However,

no reasonable jury could find from that evidence that there was a custom of

delegation when considered along with the rest of the record, which repeatedly

indicates that the police never directed the liquor licensee employees to detain and

restrain individuals until the police arrived to effect arrests.[9]  The plaintiffs'

assertions that liquor licensee employee's detention and restraint of patrons was

consistent with the SCPD's goals of keeping intoxicated people off of the streets in

light of the history of riots in State College is also not evidence that supports

plaintiffs' case.  Just because the goals of the liquor licensees and the SCPD

_____

[9]As we have already noted, a police handcuffing an individual is not

equivalent to an arrest and is sometimes necessary to secure the safety of the

officer and others.  Baker, 50 F.3d at 1193.

coincide does not mean that the SCPD has delegated its law enforcement authority to the liquor licensee employees.  Likewise, simply because the police respond to calls initiated by private parties that does not mean that police have delegated their law enforcement responsibilities to the liquor licensee employees.  Also, any SCPD failure to investigate alleged misconduct by bar employees does not provide sufficient evidence from which a reasonable jury could find that the police had a custom of using the employees to detain and restrain that was so well settled as to constitute the law.  See id.  The record indicates that the SCPD investigated each incident as they found appropriate, and furthermore, the security employees in this case were in fact prosecuted.  Finally, that there was name recognition and that the liquor licensee employees could act consistent with police procedures without direction does not provide sufficient evidence from which a reasonable jury could find that there was a delegation by the police of their law enforcement responsibilities to the liquor licensee employees.[10]  Therefore, judgment will be

---

[10] Since the liquor licensees and their employees are private actors and there is insufficient evidence from which a jury could find that they were delegated or directed to execute duties of law enforcement it is insignificant to our analysis that the licensee employees failed to comply with police use of force protocol.

entered in favor of defendant Borough of State College and against the plaintiffs as to Count I.

## V.  PLAINTIFFS' STATE-CREATED DANGER CLAIM (COUNT II)

As we noted above, in <u>DeShaney</u> the Supreme Court held that the Due Process Clause does not impose an affirmative duty to protect a citizen who is not in state custody.  <u>DeShaney</u>, 489 U.S. at 195-96 & 199-200.  This does not mean that no constitutional violation can occur when state authority is employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention." <u>Schieber v. City of Philadelphia</u>, 320 F.3d 409, 416 (3d Cir. 2003) (citing <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1205 (3d Cir. 1996).  This constitutional violation has a remedy via the "state-created danger theory" under the Due Process Claus.  <u>Id.</u> The United States Court of Appeals for the Third Circuit recently stated the essential elements of a meritorious state-created danger claim.  <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 281 (3d Cir. 2006).  A plaintiff must establish the following elements:

_____

Furthermore, the police do not owe a duty of training the licensee employees in proper restraint techniques so a failure to train theory is unsuccessful.

> (1) "the harm ultimately caused was foreseeable and fairly
> direct;" (2) a state actor acted with a degree of culpability
> that shocks the conscience; (3) a relationship between the
> state and the plaintiff existed such that "the plaintiff was a
> foreseeable victim of the defendant's acts," or a "member
> of a discrete class of persons subjected to the potential
> harm brought about by the state's actions," as opposed
> to a member of the public in general; and (4) a state actor
> <u>affirmatively</u> used his or her authority in a way that
> created a danger to the citizen or that rendered the citizen
> more vulnerable to danger than had the state not acted at
> all.

<u>Bright</u>, 443 F.3d at 281 (footnotes and citations omitted) (emphasis added).

Plaintiffs assert that the evidence advanced by them demonstrates that the "SCPD failed to address the dangers posed by the bouncers' conduct by adopting a 'look the other way' practice, by failing to take any action to stop these dangerous activities, and by affirmatively adopting a policy not to train, educate, or advise the bouncers to stop engaging in these activities." (Rec. Doc. No. 112, at 49.) In light of <u>Bright</u>, plaintiffs' state-created danger claim against SCPD must fail.[11] As we have already noted, plaintiffs have failed to come forward with any

---

[11]Neither party briefed the issue under elements set forth in <u>Bright</u>, a decision which was issued on April 4, 2006, days before the defendant's motion for summary judgment was filed. We note that <u>Bright</u>, by requiring a state actor to take an affirmative act, appears to change the fourth element of the state created danger

admissible evidence from which a reasonable jury could find that the SCPD had a policy or custom of directing bar security to detain and restrain unruly patrons to affect their arrest.  Furthermore, a jury could not reasonably infer that the police delegated their responsibilities to bar security.  Without evidence of an affirmative act on the part of the SCPD plaintiffs' state created danger theory is not actionable. Therefore, judgment will be entered in favor of defendant Borough of State College and against the plaintiffs as to Count II.

## VI.  PLAINTIFFS' SURVIVAL ACTION CLAIM (COUNT XI)

In our April 1, 2005 memorandum ruling on the defendants' motions to dismiss, we ruled that the survival action in Count XI of the complaint was not a separate theory of liability.  In relevant part we stated:

> Count XI asserts a claim under The Survival Act, 42 Pa. C.S.A. § 8302.  This count is a vehicle for other causes of action to survive the death of the plaintiff by continuing to be held by the personal representative, and is not a separate theory of liability.  Donlan v. Ridge, 58 F. Supp. 2d 604, 608 (E.D. Pa. 1999) (citing Harvey v. Hassinger, 461 A.2d 814, 816 (Pa. Super. Ct. 1983)).

---

theory.  See Bright, 443 F.3d at 288-93 (Nygaard, J., dissenting).  That said, Bright is a precedential decision controlling our decision today and foreclosing plaintiffs from succeeding on a "look the other way" theory of recovery.

(Order, Rec. Doc. No. 65, at 18.)

As we have determined that judgment as to counts One and Two should be entered in favor of the defendant State College, leaving no counts against that defendant for the survival action to be a vehicle, judgment will also be entered in favor of defendant State College as to count Eleven.

**CONCLUSION:**

For the aforementioned reasons, the court will issue an order entering

judgment in favor of defendant Borough of State College and against plaintiffs

Grace Jiminez and Brooke E. Morgan as to counts I, II and XI of the complaint.

s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GRACE JIMINEZ, as                  :
Administratrix of the Estate of    :
SALVADOR PETER SERRANO,            :
and BROOKE E. MORGAN               :        CIVIL NO. 4:04-CV-1897
                                   :
        Plaintiffs,                :        (Judge McClure)
                                   :
    v.                             :
                                   :
ALL AMERICAN                       :
RATHSKELLER, INC., d/b/a           :
THE RATHSKELLER BAR,               :
BOROUGH OF STATE COLLEGE,          :
d/b/a STATE COLLEGE POLICE         :
DEPT., PHYLLIS H. GENTZEL,         :
d/b/a THE GENTZEL                  :
CORPORATION, BLUEBIRD                   :
ENTERTAINMENT ENTERPRISE,          :
d/b/a THE DARK HORSE, JASON        :
ROSENGRANT, RYAN                        :
ROSENGRANT, CHRIS                  :
ROSENGRANT, CURTIS                 :
ROSENGRANT, COLIN                  :
HAUGHTON, and ASSOCIATED           :
PROPERTY MANAGEMENT, INC.          :
d/b/a ASSOCIATED REALTY            :
PROPERTY MANAGEMENT,               :
                                   :
        Defendants,                :

**O R D E R**

June 2, 2006

1

For the reasons set forth in the accompanying memorandum,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The motion for summary judgment filed on behalf of defendant Borough of State College is granted.  (Rec. Doc. No. 106.)

2.     The clerk is directed to defer entry of final judgment in favor of defendant Borough of State College until there has been a disposition of the entire case.

   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

2